Pauluhn Electric Manufacturing Co., Inc. v. Commissioner.
Pauluhn Elec. Mfg. Co. v. Commissioner
Docket No. 29337.
United States Tax Court
1952 Tax Ct. Memo LEXIS 173; 11 T.C.M. (CCH) 625; T.C.M. (RIA) 52189; June 19, 1952
*173 Lewis Ginsburg, Vice-President of the petitioner, for the petitioner. Paul M. Stewart, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent has determined deficiencies as follows: Excess
Income
D.V.E.P.
Profits
Taxable Year
Tax
Tax
Tax
October 31, 1944
$255.68
$19,876.98
October 31, 1945
$243.41
18,705.57
The respondent has stipulated with the petitioner that it is entitled to deductions for additional allowance for depreciation for the fiscal years ending October 31 of 1944 and 1945, in the amounts of $1,224.87 and $946.21, respectively. Effect will be given to the stipulation under Rule 50. The only issue for decision is to determine the amounts of reasonable allowance for the salaries of two officers of the petitioner, its president and secretary-treasurer. The petitioner paid each officer a salary of $20,000 for services rendered in each fiscal year ending October 31 of 1944 and 1945. The respondent has allowed deductions in each year of $10,000, only, as the reasonable allowance for the compensation of each officer. Findings of Fact The petitioner, a New *174 York corporation, organized in 1934, has its place of business in New York City, and it filed its returns for the taxable years involved with the collector for the second district of New York. It is engaged in the business of making marine-electrical fixtures, water-tight fixtures and fittings for ships, and specialty items which are produced on individual orders for foreign ships which are not produced in large quantities in mass production. Before 1934, the same business was carried on by Carl Pauluhn as a sole proprietor. The officers of petitioner are Carl Pauluhn, president; Lewis Ginsburg, vice-president; and Salvatore Russo, secretary-treasurer. Lewis Ginsburg does not participate in the management and operation of the business, he is not a stockholder, and he is not paid any salary. Carl Pauluhn owns 75 percent of the stock of petitioner, and Salvatore Russo owns 25 percent. Pauluhn and Russo manage and operate the business of the petitioner. Pauluhn is 73 years old, and Russo is 45 years old. In 1935 petitioner's net sales amounted to $15,201 and no profit was earned but a loss of $474 was sustained; in 1936 net sales and net profit were $30,234.99 and $113.37; in 1937 *175 net sales were $33,358.93 and a loss of $201.09 was sustained. Beginning in 1939, net sales and net profit increased, and during the war years, petitioner's business greatly increased. The total salaries paid petitioner's two officers during the period 1935 through 1938 increased from $2,200 to $3,620. The net sales, total salaries of Pauluhn and Russo, and the net profit for the years 1939 through 1947 (omitting cents) were as follows: Salaries
Year
Net Sales
2 Officers
Net Profit
1939
$ 56,535
$ 6,838
$ 850
1940
69,749
11,965
4,081
1941
237,237
22,250
22,916
1942
386,314
60,000
114,411
1943
318,084
60,000
46,702
1944
221,532
40,000
13,152
1945
195,168
40,000
15,843
1946
89,964
25,000
(667)
1947
152,898
30,000
4,822
No dividends have ever been paid on petitioner's stock. During the fiscal and taxable years ending October 31, 1944, and 1945, expenses of material, labor, officers' salaries, miscellaneous expenses, net profit before taxes, and net sales were as follows: Fiscal Year Ended 10/31/44
Net Sales
$221,532.28
Material
$126,916.69
Labor
19,052.85
Other Expenses
22,410.00
Officers' Salaries
40,000.00
Total Expenses
$208,379.54
Net Profit Before Taxes
13,152.74
$221,532.28
$221,532.28
Fiscal Year Ended 10/31/45
Net Sales
$195,168.59
Material
$102,092.11
Labor
15,770.08
Other Expenses
21,463.29
Officers' Salaries
40,000.00
Total Expenses
$179,325.48
Net Profit Before Taxes
15,843.11
$195,168.59
$195,168.59
*176 Officers' salaries for the 1944 fiscal year were 18 per cent of sales, and 23 per cent of all expenses other than officers' salaries; and for the 1945 fiscal year they were 20 per cent of sales and 28 per cent of all expenses other than officers' salaries. Sales of the petitioner in the 1945 fiscal year were $26,363.69 or 11 per cent less than sales in the 1944 fiscal year, but net profit before taxes was $2,690.37 greater for the 1945 fiscal year as compared with 1944. Apart from its two officers, Pauluhn and Russo, the petitioner had 10 employees in the 1944 fiscal year and 7 in the 1945 fiscal year. It had the largest number of employees - 18 - in 1941 and 1942. In 1935 the petitioner had only 2 employees. The employees were not highly skilled workers. In 1935 the petitioner's business involved the production of about fifty items, many of which were made by hand, and the business was a specialty business. During the war years it manufactured from 800 to 1,000 items. Beginning with the year 1939, the petitioner went into multiple production of single items using machine tools, molds, and dies for large production on the basis of mass production methods, so that its volume *177 of sales increased to $237,237 in 1941, and $318,084 in 1943, the peak year. Carl Pauluhn's ingenuity in making molds from which as many as six items could be made at one time was one factor which contributed to the increase in the volume of petitioner's business. However, the chief reason for the increase in volume was the demand created by the war economy. Ninety per cent of the materials used in production by the petitioner was brass. It was a scarce and critical material in 1943, 1944, and 1945, and in its place steel and bakelite were used. The changes in the materials used required changing the tools and molds in petitioner's shop. Changes were made during 1943, 1944, and 1945, when the making of new tools, molds, and dies was continuous. The making of a new mold required a month's time, on the whole. During the two fiscal years 1944 and 1945, Pauluhn made new molds and dies which would have cost petitioner about $26,000 if it had ordered them made by others. The molds were made of steel for producing articles made of plastic. All articles made of plastic materials were made from molds whereas, previously, the same articles made from brass were made from dies, tools, and screw *178 machines. During the years 1941 through 1945, labor costs increased. During the same years, petitioner charged the same prices for its products and did not increase its prices. Carl Pauluhn was in charge of production, and Salvatore Russo was in charge of all outside contacts and office management during the taxable years. The services performed by Russo were, in general, as follows: About one-half of his time was devoted to production work in the shop, and the other half to various duties which included pricing, procuring materials, making a catalogue of items produced, contacting those who purchased petitioner's products, and managing office routines, correspondence, billing, and payrolls. During the taxable years, no effort was required to sell petitioner's products, but Russo called on the suppliers who bought from petitioner to work out the details of orders and deliveries. Russo devoted all of his time to petitioner's business and worked a large amount of overtime on Saturdays and week days. His hours of work on an average of at least two days a week were from 8:00 A.M. to 10:00 or 11:00 P.M. He is a trained and experienced machinist, tool maker, draftsman, and supervisor. *179 Before working for the petitioner he did the above described work and, also, pricing, selling, and estimating, and he had prepared catalogues. Pauluhn is a highly skilled tool and die maker and is considered one of the best in his industry. Prior to 1935 he had pursued his trade for at least 26 years. He was educated in Germany in his trade and worked there and in England, France, and Russia before coming to the United States in 1909. In the United States he was employed by Westinghouse, American Aluminum, Ford, and Western Electric. During the taxable years, Pauluhn's services for petitioner included the following: He designed and made molds and dies; he made all of the tools required; he repaired tools; he trained new employees, and with Russo he supervised employees, as no foreman was employed; and he did special work. His daily hours of work during the week were from 7:00 A.M. until 11:00 and 12:00 at night, and he usually worked Saturdays until 6:00 P.M. The amounts of the salaries of Pauluhn and Russo were agreed upon for the following fiscal year in September or October of the calendar year at a time when they could estimate how much the volume of petitioner's business *180 would be. An accountant who served the petitioner, Garofalo, was consulted and advised the two officers. Although Pauluhn made tools, dies, and molds for the petitioner, the costs thereof were not capitalized. Reasonable allowances for the respective salaries of Pauluhn and Russo, as ordinary and necessary business expenses of the petitioner for each of the taxable years are as follows: Fiscal Year
Fiscal Year
10/31/44
10/31/45
Carl Pauluhn
$17,000
$15,000
Salvatore Russo
14,000
12,000
$31,000
$27,000
Opinion The question under section 23 (a) (1) (A) of the Code is to determine a reasonable allowance for the compensation of the two officer-manager-employees of the petitioner for their actual services during the taxable years. The burden of proof is upon the petitioner. , aff'd , certiorari denied, . Upon all of the evidence, a finding has been made of the respective amounts of the reasonable allowances for the salaries of Pauluhn and Russo for each year involved. Consideration has been given to the testimony of petitioner's witnesses *181 other than Pauluhn and Russo, one of whom disqualified himself as an expert on salaries paid to executives and others in the industry. Respondent did not call any witnesses to express an opinion on the amounts of reasonable allowances for salaries. Both Pauluhn and Russo are skilled and experienced men in their fields. Of the two, Pauluhn has the superior ability and in our opinion he contributed more than Russo to the production of petitioner's income. Therefore, the allowance for his compensation should be and has been found to be higher than the allowance for Russo's compensation. Both worked a substantial amount of overtime. On the other hand, production declined in the 1945 fiscal year, and the allowances for compensation for that year should be and have been found to be lower than for the 1944 fiscal year. Since the volume of business was in both years due to war demands and to mass production, the amounts of a reasonable allowance for compensation in each year should not be based entirely upon the dollar volume of net sales. Cf. , certiorari denied, . Petitioner's so-called expert witnesses not *182 as helpful as expert witnesses frequently are because they were unable to testify about the compensation paid to others who did comparable work. To some extent, the petitioner's evidence fails to overcome the prima facie correctness of the respondent's determination. Upon all of the evidence, it is concluded that reasonable allowances for the compensation of each officer are as found. Decision will be entered under Rule 50.